FILED
2014 Jul-23  AM 10:09
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

FRANKIE BRYANT, as )
Administratrix of the Estate )
of Deitrick Bryant, )
　 )
　　　Plaintiff, )
　 )
vs. )　　　7:14-CV-519-LSC
　 )
GREENE COUNTY, ALA., et al., )
　 )
　　　Defendants. )

MEMORANDUM OF OPINION

　　　This case concerns the unfortunate suicide of Deitrick Bryant ("Bryant") in the Greene County, Alabama jail. Bryant's mother Frankie Bryant ("Plaintiff") brings claims for violations of the Fourteenth Amendment to the U.S. Constitution, the Americans with Disabilities Act, and the Rehabilitation Act, as well as wrongful death and negligence claims. Before the Court are motions to dismiss the action, filed by Defendants Joe Benison ("Benison"), Barbara Collins ("Collins"), Jeremy Rancher ("Rancher"), Elston Carpenter ("Carpenter"), and Athelyn Jones ("Jones"), and the Greene County Commission. (Docs. 6, 8, 10, 12, and 14.) For the reasons stated below, the motions are due to be granted.

I. Facts Pleaded by Plaintiff

In evaluating a motion to dismiss, the Court confines itself to the facts presented in the Complaint, and takes those facts as true. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). According to the Complaint, Bryant, a resident of Greene County, suffered from depression and drug addiction. He had also been the victim of a "recent" sexual assault, though the Complaint does not reveal when the assault occurred.

On April 3, 2012, Bryant visited the Green County Circuit Clerk's Office to renew his driver's license. He was unable to do so because the county had issued a warrant for his arrest based on his failure to appear for a traffic violation. An officer attempted to arrest Bryant in the Courthouse, but Bryant resisted and fled the scene. He was later found hiding in a freezer at his last known address.

When officers found Bryant, they handcuffed him with his hands behind his back. While handcuffed, he ran from the officers who pursued him for about forty to fifty yards before Defendant Rancher tased Bryant with an X-26 taser. Bryant was not treated for any taser wound. Bryant was taken to Greene County Jail and searched. During the search, officers found marijuana in his pocket. He was charged with Assault, Possession of Marijuana, and Escape.

No bond was set for these charges, and no hearing was held between Bryant's incarceration on the evening of April 3, 2012, and his suicide approximately forty-eight

hours later on April 5, 2012. At some point during this time, Plaintiff approached a judge and informed him that Bryant needed medical care for depression. The judge explained that Plaintiff needed to arrange such care with Sheriff Benison. Plaintiff then told Benison that Bryant needed to be admitted to a drug treatment program.

Bryant did not receive any sort of medical treatment while incarcerated in the Greene County Jail. During his incarceration, Bryant was kept in a holding cell designated B-200. Cell B-200 measures fourteen feet by eight feet four inches, and contains two metal benches, one of which serves as a bed. The ceiling is eight feet from the floor, and six feet five inches from the tops of the metal benches.

Bryant was placed in this cell for the safety of himself and other inmates. According to the Complaint, Defendants had a duty to comply with "Greene County Jail Policies and Procedures" by monitoring and documenting Bryant's behavior. No documentation of Bryant's behavior exists. Plaintiff alleges that the necessary monitoring was impossible because cell B-200 did not have proper operating lights that would have allowed deputies to see into the cell from the control board. The Complaint does note, however, that light from a window and from the nearby holding area entered the cell.

The Complaint alleges that a trustee named Evans noticed that Bryant was not eating meals provided by the Greene County Jail. Jail trustees were instructed not to

converse with Bryant. At some point during his incarceration, Defendant Jones provided Bryant with pen and paper. Bryant wrote two notes, which are characterized by Plaintiff as an apology note and a suicide note. The precise content of these notes cannot be determined from the complaint. The Complaint also alleges that Bryant passed a series of notes through the cell door requesting to talk to his family and requesting bond.

On the date of his suicide, a few minutes before 5:00 p.m., Bryant notified Defendant Jones that he needed to see a doctor because he had been raped with a broom handle. The Complaint does not specify when or where this assault occurred. Defendant Jones did not report this request to anyone.

At approximately 6:05 p.m. on April 5, 2012, Bryant tied his bed sheet to an exposed ceiling beam and hanged himself. The ceiling beams in the cell were normally covered with ceiling panels. These panels apparently had special screws that attached them to the beams. Prior to Bryant's incarceration, Evans found two screws on the floor. These screws were not put back into the ceiling. Bryant was thus able to remove one of the panels and gain access to the beam from which he hung himself.

Evans found Bryant in his cell at approximately 6:40 p.m. He and Carpenter cut down the body and checked for signs of life, but none were found. EMT personnel arrived at 6:58 p.m. and determined that Bryant had no oxygen reading or heartbeat.

The autopsy concluded that suicide by hanging was the cause of death.

## II. Standard of Review

### A. Rule 12(b)(6)

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. Fed. R. Civ. Proc. 12(b)(6). " When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.' " *Grossman*, 225 F.3d at 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). Furthermore, all " reasonable inferences" are to be drawn in favor of the plaintiff. *St. George*, 285 F.3d at 1337.

Nonetheless, the plaintiff must plead " enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1] " Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th

---

[1] In *Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Twombly*, 550 U.S. at 560-63. The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.

Cir. 2003) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001)). The Federal Rules of Civil Procedure require a pleading that states a claim to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). If the facts in the pleading "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–-but it has not 'shown'—'that the pleader is entitled to relief,'" and the complaint must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Eleventh Circuit has adopted "two-pronged approach" to motions to dismiss suggested by the Supreme Court: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664). In evaluating whether a claim is plausible, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* at 1295 (quoting *Iqbal*, 556 U.S. at 682).

Using this framework, the Court takes care not to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S.

at 678-79. However, a plaintiff need not prove his case in the complaint; "the plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Chaparro v. Carnival Corp*. 693 F.3d 1333, 1338 (11th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). Further, a complaint should not be dismissed unless the allegations do not support any plausible theory of relief. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

    B. Qualified Immunity

    In addition to moving to dismiss the claims, Defendants also advance the affirmative defense of qualified immunity. (Doc. 43 at 22.) The Supreme Court has stressed that qualified immunity represents an immunity from suit rather than a defense to liability, and that it should therefore be addressed in the earliest possible stage of a case. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). When the Defendant is acting within his official discretion, qualified immunity serves to dismiss a claim at the 12(b)(6) stage if the Court concludes from the face of the complaint that the law supporting the claim was not clearly established before the defendant acted. *Marsh*, 268 F.3d at 1023. In addressing a motion to dismiss, the Court may first determine whether a constitutional right has been violated, and then whether that right had been clearly established, or it may skip directly to the "clearly established" prong. *Pearson*

*v. Callahan*, 555 U.S. 223, 235-236 (2009).

III. Discussion

The Court first notes that, in her reply brief, Plaintiff affirmatively abandoned all claims against the Greene County Commission. (Doc. 22 at 1.) Therefore, the Greene County Commission's motion to dismiss is due to be granted.

A. Claims Brought Under 42 U.S.C. 1983

Plaintiff's constitutional claims can be organized into three basic categories. First, she alleges that Defendant Rancher used excessive force in arresting Bryant. Secondly, Plaintiff argues that several defendants who were present at the jail during Bryant's incarceration were deliberately indifferent to his medical needs. Finally, Plaintiff claims that Defendants Benison and Collins enacted policies or followed customs that violated Bryant's constitutional rights.

1. The Excessive Force Claim

This claim is alleged against Defendant Jeremy Rancher, who is identified in the Complaint as a Deputy for Greene County. The Complaint alleges that Rancher "discharged an X-26 Taser hitting Bryant with multiple bursts of electrical current." (Doc. 1 at 5.)[2] The use of excessive force in carrying out an arrest can constitute a

---

[2] It is unclear to the Court whether this sentence means Rancher fired more than once or whether a single discharge caused multiple bursts to hit Bryant. However, Plaintiff does not appear to base any of her excessive force argument on multiple firings, so the Court will not

violation of the Fourth Amendment's prohibition against unreasonable search and seizure. *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998). However, an officer of the law does have the right to use physical coercion to affect an arrest. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 22-24 (1968). To determine whether the particular amount of force used was reasonable, the court must examine "the facts and circumstances . . . including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

In addition, Rancher has raised the defense of qualified immunity. Rancher has rightfully asserted that he was acting within his discretionary authority. *See Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (noting that the relevant inquiry is whether the acts are "of a type that fell within the employee's job responsibilities.") Making arrests falls within the job responsibilities of Deputy Rancher. The question of whether the arrest was effectuated constitutionally does not impact whether it was within his discretionary authority. *See Jordan v. Doe*, 38 F.3d 1559, 1561 (11th Cir. 1994). Since it is within that authority, the Court must determine whether the

---

address that issue.

complaint alleges a violation of clearly established law. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987).

In this case, Bryant, though handcuffed and unarmed, was in the act of fleeing or trying to escape from the officers. Deadly force may not be used solely to prevent escape, unless probable cause exists " to believe that that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Garner*, 471 U.S. at 11. However, a " taser is a non-deadly weapon." *Fils v. City of Aventura*, 647 F.3d 1272, 1276 n.2 (11th Cir. 2011)). The reasonableness of force used in effectuating the arrest must be determined from the point of view of a reasonable officer on the scene, without the benefit of hindsight. *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924. Therefore, even assuming arguendo that the excessive tasing contributed to Bryant's death, this cannot convert the use of the taser into deadly force because Rancher could not have known ahead of time that it would lead to death.

The Court must therefore analyze the excessive force claim using the three factors noted in *Graham*. 490 U.S. at 396. In this case, the crimes alleged against Bryant were moderate in severity. Although officers initially tried to arrest him for failing to pay a traffic ticket, Bryant allegedly committed both escape and assault before he was tased. Both of these crimes are felonies. Ala. Code §§ 13A-12-06-20, 13A-10-31. The second factor, whether the suspect is a threat to officers or other

civilians, appears to cut in Plaintiff's favor, because Bryant was handcuffed and there was no indication that he was armed. The third factor, however, favors Defendant Rancher, because Bryant had already escaped from officers once on the date in question and was attempting to flee at the time he was tased.

Defendant Rancher's conduct did not constitute excessive force. *See Oliver v. Fiorino*, 586 F.3d 898, 906 (11th Cir. 2009) (noting that tasing an unarmed suspect once may have been justified, even where multiple tasings was excessive force). The Eleventh Circuit has countenanced the use of a taser on a party that refused to cooperate with police commands, even where the initial traffic stop was for an inoperative tag light. *Draper*, 369 F.3d at 1278. Further, where the suspect continues to fight or flee, the use of the taser may be reasonable even when he is in handcuffs. *Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008). Therefore, Rancher's use of force against Bryant was reasonable.

However, even assuming arguendo that a constitutional violation occurred, the violation was not clearly established at the time of the arrest. *Pearson*, 555 U.S. at 244-45. In order for the right to be clearly established, previous case law of the U.S. Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court must make it obvious to a reasonable government actor that his actions violate federal law. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). *Hope* abrogated the Eleventh Circuit's previous

standard requiring almost identical facts to show clearly established law. However, it remains true that the clearly established test does not apply at a high level of generality, but rather in a more particularized sense. *Id.* at 741-42; *see also Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). In other words, Defendant Rancher would have to know that applying significant but non-deadly force to a handcuffed but not subdued defendant who was then attempting to escape constituted a constitutional violation. There is no such relevant case law. If anything, the existing authority clearly supports Rancher's conduct as reasonable. Thus, the excessive force claim against him is due to be dismissed.

### 2. Deliberate Indifference Claims

Plaintiff alleges that Defendants Benison, Carpenter, and Jones were deliberately indifferent to Bryant's serious medical needs. Because Bryant was a pretrial detainee, these claims are based on the due process clause of the Fourteenth Amendment. *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994). Detainees have a right to receive medical treatment and a right to be protected from self-inflicted injuries. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). To make out a deliberate indifference claim, the plaintiff must demonstrate that the defendant 1) had subjective knowledge of a risk of serious harm, and 2) disregarded that risk; 3) through conduct that was more than

mere negligence. *Cagle v. Sutherland*, 334 F. 3d 980, 987 (11th Cir. 2003) (citing

*McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

When the deliberate indifference is alleged to have led to a prisoner suicide,

" [t]he mere opportunity for suicide, without more, is clearly insufficient to impose

liability on those charged with care of prisoners." *Cagle*, 334 F.3d. at 986 (quoting

*Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1540 (11th Cir. 1994). Rather, Eleventh

Circuit precedent requires that the defendant intentionally disregarded " a strong

likelihood rather than a mere possibility that the self-infliction of harm will occur."

*Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990). Furthermore, the

plaintiff must show that the defendant was subjectively aware that the combination of

the prisoner's suicidal tendencies and the feasibility of suicide in the detention

environment would likely lead to self-harm. *Gish v. Thomas*, 516 F.3d 952, 955 (11th

Cir. 2008). Finally, the plaintiff must show that each defendant had personal

knowledge of this likelihood; respondeat superior cannot form the basis of liability for

a § 1983 claim. *Cook*, 402 F.3d at 1115-16. Therefore, the Court must evaluate these

claims individually with respect to each Defendant.

### a. Sheriff Benison

Plaintiff points to several pieces of knowledge that allegedly should have placed

Benison on notice of a strong likelihood that Bryant would harm himself. First,

Plaintiff alleges that Benison knew of the "excessive tasing" that occurred during Bryant's arrest. However, Plaintiff pleads no facts to support this assertion. The Complaint does not allege that Benison was present for the arrest, nor does it state that Defendant Rancher or anyone else who was actually present informed him of the use of the taser. In fact the complaint states that Rancher did not file the requisite report after tasing Bryant, thus making it less likely that Benison learned of the incident.

Plaintiff also alleges that Benison should have been on notice of Bryant's potential suicidal tendencies because he exhibited impulsive behaviors during the arrest, suffered from a sexual assault, and was subject to multiple felonious charges. Again Plaintiff fails to plead facts that would lead the Court to conclude that Sheriff Benison should have known that Bryant was suicidal. Even if we assume that Benison knew the charges against Bryant, which would give him some idea of Bryant's irrational actions during the arrest, Plaintiff pleads nothing but a bare conclusion that Benison knew of the sexual assault, without any facts showing he would have had such knowledge. The Complaint contains no facts as to when the sexual assault actually occurred, and the only Defendant alleged to have received specific information about the assault is Defendant Jones. In addition, although Bryant failed to eat certain meals during his incarceration, the Complaint alleges only that Defendant Carpenter failed to observe or report this fact. It does not provide any reason to believe that Benison

Page 14 of 26

knew about Bryant's refusal to eat.

The Complaint does allege that Plaintiff spoke to Sheriff Benison about Bryant's condition, asserting that he needed treatment for depression and drug rehabilitation. Plaintiff also expressed concern that Benison might have been questioning Bryant about a shooting in another county. She also told Benison that Bryant had expressed that he felt "someone was out to get him," which caused Plaintiff to believe that Bryant was suffering from a severe mental illness. Additionally, the Complaint asserts that Sheriff Benison ordered that Bryant be placed in a specific holding cell "[d]ue to irrational and volatile actions . . . for the safety of himself and other inmates." (Doc. 1 at 7). This statement is in quotes in the Complaint, but the source of the quotation is never revealed. Finally, the Complaint mentions that Bryant wrote two notes, one of which it characterizes as "a type of suicide note," but no facts are alleged concerning the contents of either note. (Doc. 1 at 10).

Examining these facts as a whole, Benison may have had some idea that Bryant resisted during his arrest, and may have known that he was arrested for multiple felonies and was a drug user. In addition, Benison certainly had been informed by the Plaintiff that Bryant was depressed. Applying Eleventh Circuit precedent to these facts, the question is not whether Benison might have known that some form of medical treatment was needed, but whether he knew there was a "strong likelihood . . .

that the self infliction of harm [would] occur." *Popham*, 908 F.2d at 1563. Such knowledge has been found to exist where the officer was both told that the prisoner was suicidal and had knowledge of a previous suicide attempt. *Snow ex rel. Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1265 (11th Cir. 2005).

Knowledge that the detainee is or may be mentally ill does not, by itself, provide subjective knowledge of a strong likelihood of suicide. *Williams v. Lee County, Ala.*, 78 F.3d 491, 492-93 (11th Cir. 1996) (finding no deliberate indifference where jail officials knew that prisoner had left one mental health facility and was awaiting transfer to another). The fact that a detainee writes notes requesting psychiatric attention was likewise insufficient to support a finding of deliberate indifference. *Cook*, 402 F.3d at 1101. Similarly, information from family members that a detainee may be suicidal does not mean an officer knew of a strong likelihood of self-harm. *Fowler v. Chattooga County, Ga.*, 307 Fed. Appx 363, 365-66 (11th Cir. 2009). If no knowledge of such a strong likelihood exists, jail conditions that render suicide feasible cannot support a deliberate indifference claim on their own. *Gish*, 516 F.3d at 955.

In this case, Plaintiff alleges nothing from which one could plausibly conclude that Benison believed Bryant to be suicidal or that Bryant had ever attempted suicide in the past. The Complaint contains numerous factual and legal conclusions about what Benison knew and whether he exhibited deliberate indifference, but lacks

sufficient facts to make these conclusions plausible. *See Twombly*, 554 U.S. at 570. Perhaps the Complaint plausibly alleges that Defendant Benison knew that Bryant needed some sort of medical attention, but it does not plausibly allege that he knew of a strong likelihood of suicide, as required to demonstrate deliberate indifference. *Popham*, 908 F.2d at 1563. Furthermore, even if the Court were to assume Benison's actions rise to the level of a constitutional violation, the case law cited above makes it clear that this violation was not clearly established in existing law at the time of Bryant's death. Therefore, Benison is entitled to qualified immunity on the deliberate indifference claim against him, which is thus due to be dismissed.

### b. Defendant Carpenter

Elston Carpenter is a correctional officer who works in the Greene County Jail. The Complaint alleges that he "was responsible for continually observing [Bryant's] demeanor to monitor him for suicidal tendencies . . . ." (Doc. 1 at 4). No facts indicate why this duty fell particularly on Carpenter. The Complaint also states that, while Carpenter was supervising trustees on trash duty, he passed by Bryant's cell and saw him standing up at the front door looking at Carpenter and the trustees. The Complaint assumes that Bryant may have requested to talk to his mother or see a doctor at this time, which was after he had allegedly told Defendant Jones about the sexual assault. However, it does not allege, even conclusorily, that he said anything

specific to Defendant Carpenter. Finally, the complaint states that Carpenter was called to assist the trustee who found Bryant's body; Carpenter procured scissors, helped cut Bryant's body down, checked for signs of life, and called the Sheriff.

The Complaint relates no facts that would allow a plausible conclusion that Defendant Carpenter had subjective knowledge of a strong likelihood of suicide. *See Popham*, 908 F.2d at 1563. Therefore, the deliberate indifference claim against him must fail. This claim is due to be dismissed.

### c. Defendant Jones

Athelyn Jones is a corporal for Greene County, and the Complaint alleges that she was responsible for operating the control board at the jail. Plaintiff asserts that this should have allowed her to observe Bryant's demeanor and "monitor him for suicidal tendencies." (Doc. 1 at 3). In addition to this duty, Jones occasionally made rounds in the jail to observe the prisoners. On one of these rounds, Jones allegedly provided Bryant with pen and paper, which he used to write the two notes. Approximately an hour and fifteen minutes before Bryant hanged himself, Jones visited his cell on her rounds and was told that Bryant needed to see a doctor because he had been raped with a broom handle. Jones did not report the alleged rape before Bryant's suicide.

The fact that Jones was assigned to monitor the control room is only relevant if Plaintiff plausibly alleges that she should have seen something that made her believe

that there was a strong likelihood that Plaintiff would harm himself. Plaintiff does not allege anything that Jones would or should have seen that would have indicated to her that Plaintiff was suicidal. As noted above, the conditions of confinement, including the lighting in the cell, must combine with subjective knowledge of the likelihood of suicide in order for a constitutional violation to exist. *Gish*, 516 F.3d at 955. According to the Complaint, Bryant's note revealing the rape, which had to have occurred before he was incarcerated, said only that he needed medical attention and did not indicate that he was suicidal. The fact that he hanged himself shortly thereafter does not retrospectively give Jones knowledge that suicide was likely. Therefore, Plaintiff's deliberate indifference claim against Jones is due to be dismissed.

### 3. Unconstitutional Policy Claims

Plaintiff also alleges that Defendants Benison and Collins created policies or allowed customs to flourish that led to Bryant's death. Because respondeat superior does not exist in § 1983 claims, a plaintiff seeking to impose liability on a supervisor or government must demonstrate a policy or custom that caused her injuries. *Monell* v. *Department of Social Servs.*, 436 U.S. 658, 690 (1978). To survive a motion to dismiss, a plaintiff must allege either an existing official policy or a custom. *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). A custom can be created "through the repeated acts of a final policymaker." *Id.* at 1329. The plaintiff must

identify a specific policy or custom that caused her injury. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *Board of County Com'rs v. Brown*, 520 U.S. 397, 403-04 (1997).

Plaintiff does not allege any specific policies promulgated by Benison. Instead, the Complaint makes allegations in terms of what the policies did or did not do. For example, the Complaint alleges that the implemented policies did not provide adequate health care for Bryant, but it does not state that Benison promulgated an official policy of denying health care to pre-trial detainees. Nor does the Complaint allege a custom by showing that Benison, assuming arguendo that he is a final policymaker, had denied such health care to others in Bryant's position. Likewise, the Complaint states that a policy or custom led to Bryant being placed in a dark holding cell with access to the metal bars in the ceiling. However, it provides no clue as to what such a policy might provide. Nor does the Complaint mention any instances from which a custom might be established.

The Complaint also alleges that Benison should be liable for failing to implement the recommendations of the American Correctional Association. A failure to follow the guidelines of the ACA does not automatically trigger a constitutional violation. *Rhodes*, 452 U.S. at 366. Plaintiff accepts that not every violation of the ACA guidelines or the Greene County Jail Handbook (which stipulates that the jail must be

run under those guidelines) rises to the level of a constitutional violation. (Doc. 19 at 10). She is correct that some violations of a handbook or the ACA guidelines can rise to that level, but in order to demonstrate such violations, the plaintiff must show the existence of a policy or custom that contravenes the guidelines in a way that causes constitutional injury. Here, Plaintiff fails to allege any official policy of breaking the ACA guidelines. Furthermore, she does not allege a custom because the Complaint provides no facts about any instance other than Bryant's occurrence. Thus, it cannot allege repeated actions by a final decisionmaker.

Plaintiff fails to allege any policy or custom promulgated or followed by Defendants Benison or Collins. Therefore, her allegations of constitutional violation caused by a custom or policy necessarily fail. Thus these claims are due to be dismissed.

B. Claims Brought Under the Rehabilitation Act and Americans With Disabilities Act

The Complaint alleges these claims solely against Greene County and the Greene County Commission. (Doc. 1 at 18-22). Plaintiff has since abandoned all claims against these defendants. (Doc. 22 at 1). Therefore, these claims are due to be dismissed.

C. State Law Claims

Plaintiff brings state law claims for wrongful death and negligence. The Court has jurisdiction over these claims under 28 U.S.C. § 1367. In this statute, Congress authorized federal courts to exercise supplemental jurisdiction when the state law claims "form part of the same case or controversy" as claims over which the Court has federal jurisdiction. 28 U.S.C. § 1367(a). A state law claim forms part of the same case or controversy as a federal claim when the two claims "derive from a common nucleus of operative fact." *Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 679 (11th Cir.   2012). Here all of Plaintiff's claims derive from the same facts surrounding Bryant's arrest and incarceration. Thus, the Court is within its power to exercise supplemental jurisdiction.

The Court is also within its discretion to decline to exercise supplemental jurisdiction, based on 28 U.S.C. § 1367(c). This subsection allows the district court to decline supplemental jurisdiction if it has dismissed all claims within original federal jurisdiction, which is the case here. District courts consider four factors in determining whether to exercise supplemental jurisdiction: judicial economy, convenience, fairness to litigants, and comity. *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 745 (11th Cir. 2006). Where state law is clear and this Court can dismiss without the need for further litigation, these factors favor the exercise of jurisdiction. Where further determination of state law is necessary, the litigation is best left to the state courts, and

jurisdiction may be declined. *See Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) (noting that state, rather than federal courts, should be the arbiter of state law).

### 1. Defendants Benison and Rancher

Benison and Rancher enjoy absolute immunity under the Alabama Constitution. *See Ex parte Sumter County*, 953 So. 2d 1235, 1239 (Ala. 2006). " The law is clear in Alabama that sheriffs are constitutionally established executive officers of the State of Alabama." *Id.* Sheriff Benison's position as an executive officer of the state entitles him to absolute immunity from against suits for money damages under Article I, § 14 of the Alabama Constitution. *Parker v. Amerson*, 519 So. 2d 442, 442-43 (Ala. 1987). This immunity cannot be affected by the question of whether state-agent immunity, a completely separate concept, would be appropriate. *Ex parte Tirey*, 977 So. 2d 469, 470 (Ala. 2007). Therefore, the state law claims against Defendant Benison are due to be dismissed.

The state immunity afforded to sheriffs extends to deputy sheriffs acting within the scope of their employment. *Ex parte Donaldson*, 80 So. 3d 895, 898 (Ala. 2011). Deputy sheriffs enjoy such immunity because the deputy " is legally an extension of the sheriff." *Id.* (quoting *Alexander v. Hatfield*, 652 So. 2d 1142, 1144 (Ala. 1994). Like Sheriff Benison, Deputy Rancher is entitled to absolute state immunity whether he

would be entitled to state-agent immunity or not. *See Sumter Cnty.*, 953 So. 2d at 1239-40. Plaintiff does not allege that Defendant Rancher engaged in any activities outside the scope of his employment. Therefore, the state law claims against Defendant Rancher are due to be dismissed.

### 2. Defendants Collins, Carpenter, and Jones

Defendants Collins, Carpenter, and Jones work in the Greene County Jail. According to Defendants, Ala. Code § 14-6-1 provides them with the same immunity granted to the sheriff. Plaintiff, on the other hand, notes that *Ex parte Shelley* held that a jailer, unlike a deputy sheriff, cannot be viewed as a legal alter ego of the sheriff and was not entitled to state immunity. 53 So. 3d 887, 896-97 (Ala. 2009). *Shelley* mentioned Ala. Code § 14-6-1 in a footnote, solely to note that a previous case had found unconstitutional an earlier version of the statute holding Sheriffs liable for the acts of jailers. *Id.* at n. 8 (citing *Parker*, 519 So. 2d at 446).

Subsequent cases have not fully clarified the relationship between *Shelley* and Ala. Code § 14-6-1. This precedent does reveal, however, that a fact-intensive determination of whether a particular jail official qualifies as a deputy sheriff or whether he has powers to act as a peace officer is important to the Court's decision to grant either state or state-agent immunity. *See Ex parte Burnell*, 90 So. 3d 708, 711-15 (Ala. 2012); *Walker v. City of Huntsville*, 62 So. 3d 474, 501 (Ala. 2010). This factual

inquiry, along with the legal reasoning required to reconcile *Shelley* with Ala. Code § 14-6-1, is best undertaken by an Alabama state court. Since all of Plaintiff's federal claims have been dismissed, this Court is within its discretion to decline to exercise jurisdiction over the state law claims against Collins, Carpenter, and Jones. 28 U.S.C. 1367(c)(3). Thus, Plaintiff's claims against these defendants are dismissed without prejudice to being refiled in state court, should Plaintiff determine such to be appropriate and supported by law.

IV. Conclusion

Plaintiff's excessive force claim fails because clearly established law could not make a responsible officer aware that a single use of a taser on a handcuffed but resisting suspect violated that suspect's constitutional rights. Plaintiff's deliberate indifference claims fail because Plaintiff does not allege facts that plausibly show that any of the defendants possessed knowledge of a strong likelihood of suicide. Plaintiff's claims concerning unconstitutional policies or customs fail because Plaintiff has failed to plausibly allege the existence of such a policy or custom. Plaintiff has abandoned all claims under the ADA and the Rehabilitation Act. Plaintiff's state law claims against Benison and Rancher fail because those Defendants are entitled to absolute state immunity. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Collins, Carpenter, and Jones. Therefore, all of Plaintiff's

claims are due to be dismissed. A separate order will be entered.

Done this 23<u>rd</u> day of <u>July 2014</u>.

<u>L. SCOTT COOGLER</u>
UNITED STATES DISTRICT JUDGE

174310